IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ROBERT DAVID GILLESPIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 122-128 |
| | ) | |
| MISS CRYSTIE JAMES, Head Nurse; | ) | |
| MISS SAINT, Nurse; LT. S. YOUNG; | ) | |
| SHERIFF CLAY WHITTLE; JOHN | ) | |
| DOE, C/O; CORRECT HEALTH; MRS. | ) | |
| MOSLEY, C/O; JANE/JOHN DOE, C/O; | ) | |
| MR. TONY HOWARD, II; DR. SMITH; and | ) | |
| PATROL OFFICER, Unknown John Doe, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, formerly detained at Columbia County Detention Center, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

## I.   SCREENING THE COMPLAINT

### A.   BACKGROUND

Plaintiff names Defendants: (1) Head Nurse Crystie James, (2) Nurse Miss Saint, (3) Lt. S. Young, (4) Sheriff Clay Whittle, (5) Patrol Officer John Doe ("Doe One"), (6) Correct Health, (7) Correctional Officer Mrs. Mosley, (8) Unknown Correctional Officer Jane/John

Doe ( "Doe Two"), (9) Tony Howard II, (10) Dr. Smith, and (11) Unknown Correctional Officer John Doe ("Doe Three"). (Doc. no. 1, pp. 2-4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On or about July 21, 2021, Nurse Witt came into Plaintiff's cell to administer him medication. (Id. at 7.) Nurse Witt handed Plaintiff a handful of pills, which he took as he believed they were from the VA Hospital. (Id.) Nurse Witt read off the medications she gave to Plaintiff and Plaintiff heard "ibuprofen," to which Plaintiff has an allergy. (Id.) Plaintiff screamed at Nurse Witt, "I won't be breathing in a few minutes," and, "don't you [] people have my chart?" (Id.) Nurse Witt told Plaintiff that Defendant James does not require medical staff to carry the chart around. (Id.) Nurse Witt retrieved Plaintiff's chart to review his allergies and returned with a syringe with 50 milligrams of Benadryl, which she proceeded to slowly inject into Plaintiff's arm. (Id. at 7, 24.) Plaintiff had turned blue and could not breathe. (Id.) Plaintiff claims Nurse Witt stated, "you [are] the first person to receive this type of shot in here," and Plaintiff responded, "so I am a guinea pig?" (Id.) After the medication was administered, Nurse Witt told Plaintiff he would "sleep real good." (Id. at 8.)

The next day, on July 22, 2021, Defendant Mosley was working the A-pod when she heard a loud bang, saw water coming from Plaintiff's cell door, and saw Plaintiff had damaged the cell's fire sprinkler head with his walking cane. (Id.) Defendant Mosley, Defendant Young, and two unidentified officers (presumably Does Two and Three) went into Plaintiff's cell and cuffed him. (Id.) The first of these unidentified officers punched Plaintiff in the face while the second cuffed him, and a third unidentified officer kicked Plaintiff in the head and knocked out his tooth. (Id.) After Defendants cuffed Plaintiff, they carried him by his cuffs and threw him into confinement. (Id. at 9.) The officers "crunched" down on his back to

uncuff him and left.  (Id.)  Plaintiff characterizes this narrative as the account of eyewitness inmate Robert Rickerson.  (Doc. no. 1, p. 8.)

For the next seven days, Plaintiff was in a hallucinogenic state due to the medication Nurse Witt administered on July 21st.  (Id.)  The only people who checked on him were Nurses Williamson and Fuller.  (Id.)  Plaintiff did not eat or drink.  (Id.)  When Plaintiff came out of the hallucinogenic state, Officer Roberts stated Plaintiff was "out of it" and "could not put two words together to start a sentence."  (Id.)  Plaintiff could not remember where he was in jail or his mother's phone number or address.  (Id. at 9-10.)  Plaintiff was moved out of lockdown on August 6, 2022.  (Id. at 10.)

At some point, Plaintiff was allowed to meet with his public defender Lee Prescott, who advised Plaintiff he was being charged with interfering with government property.  (Id.) Plaintiff asked Mr. Prescott to obtain a copy of his medical records because he did not remember taking the pills or receiving the shot.  (Id.)  Plaintiff believes he was poisoned by the medications.  (Id.)  On September 27, 2021, Plaintiff received a letter regarding his medical status, and on November 8, 2021, Defendant Howard, also identified as Plaintiff's public defender, wrote to Plaintiff stating "he does have [Plaintiff's] medical records."  (Id. at 10, 25.) However, Plaintiff states the records were altered or destroyed.  (Id.)  On November 22, 2021, after recognizing Nurse Witt's voice over the jail intercom, Plaintiff asked her if she gave him the medications back in July.  (Id. at 11.)  Nurse Witt stated she did and remarked Plaintiff "almost died."  (Id.) Nurse Witt stated she left a sticky note on Plaintiff's file for the head nurse, Defendant James.  (Id. at 11, 24.)

Also in November 2021, Plaintiff started feeling intense pain in his arm due to the handcuffing and sprinkler incident but was afraid of the nursing staff, so he put in numerous

requests for an X-ray of his arm.  (Id.)  Plaintiff received an X-ray which showed bone displacement.  (Id.)  On January 31, 2022, Plaintiff submitted a grievance.  (Id.)  On February 15, 2022, Plaintiff saw Defendants Smith and James for his arm pain.  (Id.)  At this visit, Defendant Smith said it was unusual Plaintiff's medical records disappeared and noted Nurse Witt and officers treated him poorly.  (Id. at 12.)  In February 2022, Plaintiff received a notice from the clerk's office with a copy of a signed waiver, which Plaintiff claims he never signed or gave permission to sign.  (Id. at 10-11.)

In spring 2022, Plaintiff saw Dr. Lori Graves virtually, who mentioned his medical records did not show he received ibuprofen or a shot in July.  (Id. at 12.)  In August 2022, someone else at the jail told him the same thing about his medical records, but also that medical was undergoing a computer change.  (Id.)  Plaintiff received another X-ray for his arm by an outside doctor, showing he had no broken bones, but the doctor suggested an MRI and sixteen weeks of physical therapy where Plaintiff will "be put under" while medical personnel "put him on the table and yank his arm around."  (Id.)

On numerous occasions from November 2021 to August 2022, Plaintiff filed complaints and grievances with medical about the July medical issues and his arm injury.  (Id. at 12-13, 23-26.)  Plaintiff enumerates specific claims as follows: Defendant Doe One violated his Fifth and Fourteenth Amendment rights, Defendant Whittle is liable as a supervisor; Defendants James, Saint, and Smith acted with deliberate indifference and committed medical malpractice, Defendant Correct Health and Defendant Whittle are liable as supervisors; Defendant Young, Mosely, Doe Two, and Doe Three violated Plaintiff's Eighth Amendment rights; and Defendant Howard "knowingly and willingly sign[ing] [Plaintiff's] signature to a legal document."  (Id. at 14-16.)

## B.      DISCUSSION

### 1.      Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w]' that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff fails to State a Supervisory Liability Claim Against Defendant Whittle and Correct Health

Defendants Whittle and Correct Health cannot be held liable merely in light of their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendants liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See

Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Here, Plaintiff appears to name these Defendants not because of their direct involvement in

the events about which he complains, but by virtue of their supervisory positions, as Defendant

Whittle runs the Sheriff's Department and County Detention Center, for which Correct Health

presumably provides health services.  As the only mention of Defendants Whittle and Correct

Health is in the section of the complaint where Plaintiff enumerates his specific claim, it is

clear from the complaint Plaintiff expressly holds both liable solely on the basis of respondeat

superior.

Therefore, Plaintiff must allege a causal connection between Defendants Whittle and

Correct Health and the asserted constitutional violations in order to hold them liable.  See

Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal

connection between a defendant and an alleged constitutional violation); see also Ireland v.

Prummell, No. 20-10539, 2022 WL 16912130, at *5 (11th Cir. Nov. 14, 2022) (explaining

while private health service providers contracted by jails may be liable under § 1983, liability

may not be premised on *respondeat superior*); Curtis v. CoreCivic, Inc., No. CV 321-015, 2021

WL 4227065, at *3 (S.D. Ga. Sept. 16, 2021) ("[A] § 1983 plaintiff must also identify the private

entity's policy or custom that led to the alleged constitutional violation.").

The "causal connection" can be established "when a history of widespread abuse puts

the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails

to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . .

result[s] in deliberate indifference to constitutional rights.'"  Hartley, 193 F.3d at 1269

(quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for

demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that

constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." <u>Brown</u>, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation. Plaintiff has not alleged (1) a history of widespread civil rights abuses pertaining to the Eighth or Fifth Amendment at the Columbia County Detention Center or at Correct Health, (2) an improper custom or policy put in place by Defendant Whittle or Correct Health regarding medical treatment or Fifth Amendment issues, or (3) an inference Defendants Whittle or Correct Health directed the other Defendants to act, or knew they would act, unlawfully. In sum, Plaintiff has not shown Defendants Whittle or Correct Health actually participated in the alleged constitutional violations; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted, and Defendants Whittle and Correct Health should be dismissed.

### 3. Plaintiff Fails to State a Deliberate Medical Indifference Claim Against Defendant James, Smith, and Saint

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. <u>Melton v. Abston</u>, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*). To satisfy the objective component regarding a serious medical need, a prisoner must

allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is

so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth

Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).   To satisfy the subjective component that a

defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person:

(1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by

(3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d

at 1223.[1]

Furthermore, "not every claim by a prisoner that he has not received adequate medical

treatment states a violation of the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243

(11th Cir. 2003).  The Eighth Amendment does not mandate that the medical care provided to

the prisoner "be perfect, the best obtainable, or even very good."  Harris v. Thigpen, 941 F.2d

1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980)

(Bowen, J.)).  As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an
> unnecessary and wanton infliction of pain" or to be "repugnant to the conscience
> of mankind."   Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of
> medical mistreatment under the Eighth Amendment.  Medical malpractice does
> not become a constitutional violation merely because the victim is a prisoner.
> In order to state a cognizable claim, a prisoner must allege acts or omissions
> sufficiently harmful to evidence deliberate indifference to serious medical
> needs.

---

[1]The Court notes "[t]echnically, the Fourteenth Amendment Due Process Clause, not the
Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees . . . .
However, the standards under the Fourteenth Amendment are identical to those under the Eighth"
in regard to claims for medical deliberate indifference.  Goebert, 510 F.3d at 1326.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).   Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference.  Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010).   Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

Plaintiff fails to state a claim against Defendants Smith, James, and Saint.  He saw Defendants Smith and James in February 2022 for his arm pain, and Defendant Smith merely commented on his medical records and his treatment at the jail.  Plaintiff makes no allegations regarding the type or quality of medical care Defendants Smith and James provided, nor what acts or omissions he believes were deliberately indifferent.  He simply says they were deliberately indifferent and committed medical malpractice.  Such bare allegations do not satisfy the elements of a medical deliberate indifference claim.  Additionally, as explained, a medical malpractice allegation is insufficient to support a claim for deprivation of one's rights under § 1983.

Plaintiff also does not state a deliberate indifference claim against Defendant Saint, whom he names once in the complaint and alleges she was deliberately indifferent to his serious medical needs and committed medical malpractice.  Such factually devoid allegations

will not suffice. Iqbal, 556 U.S. at 678. Defendants James, Saint, and Smith should be dismissed.

Plaintiff's allegations regarding his medical care at Columbia County Detention Center mostly recount the actions of Nurse Witt, whom Plaintiff chose not to list as a Defendant in the spaces reserved for naming Defendants in the form complaint, in his attached list of Defendants, and at the conclusion of his complaint where he enumerated his claims. If Plaintiff had intended to name Nurse Witt as a Defendant, her actions similarly do not constitute a violation of the Eighth Amendment. He alleges she gave him ibuprofen after failing to look at his chart and see he was allergic. Her failure to inquire into his allergies or check his chart before providing him ibuprofen was negligence at most and not deliberate indifference. This is particularly true because Plaintiff admits that Nurse Witt sprung into action and immediately administered Benadryl to stop the allergic reaction. Her failure to caution him of the side effects prior to administering Benadryl likewise does not constitute anything more than negligence. Acting quickly to stop an allergic reaction is the obvious best course of action, as common sense and Plaintiff's own allegations suggest. Plaintiff's allegations as whole therefore fail to state a claim for deliberate indifference to serious medical need under the Eighth Amendment.

### 4.    Plaintiff Fails to State a Claim Against Defendant Howard, Whittle, and Doe One

Plaintiff mentions Defendant Howard once in the narrative of events giving rise to his claims when he states Defendant Howard wrote Plaintiff that "he does have [Plaintiff's] medical records." (Doc. no. 1, p. 10.) However, when describing his specific claim against Defendant Howard, Plaintiff states Defendant Howard "knowingly and willingly, signing [Plaintiff's] signature to a legal document, knowing I did not give him permission" and thus violated Plaintiff's Fifth and Fourteenth Amendment rights. (Id. at 16.) First, Defendant Howard is Plaintiff's public

defender, and a public defender is not a state actor for purposes of § 1983. Rolle v. Glenn, 712 F. App'x 897, 899 (11th Cir. 2017) (*per curiam*) (citing Polk Cty. v. Dodson, 454 U.S. 312, 325 (1981)).

Second, Plaintiff provides no further information on what legal documents were forged or how a forgery relates to Plaintiff's Fifth Amendment rights, though he attaches a grievance that suggests the "forgery" may have occurred while waiving the right to an arraignment. (Doc. no. 1, p. 25.) Plaintiff's complaint, lacking in all important details, thus fails to state a claim Defendant Howard, and he should be dismissed. See Iqbal, 556 U.S. at 678; see also West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law); Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").

### 5.  Plaintiff Fails to State a Claim Against Defendants Whittle and Doe One

When saying which claim he makes against Defendants Whittle and Doe One (identified as a patrol officer), Plaintiff claims they violated his Fifth and Fourteenth Amendment rights "in making proper arrest." (Doc. no. 1, p. 14.) It appears Plaintiff's claim against Defendants Whittle and Doe One arises from the April 2021 stop and arrest at a grocery store parking lot that led to Defendant's confinement. (See doc. no. 1, pp. 6, 14.) Plaintiff provides no further details of this claim, which appears unrelated to the rest of his complaint. His factually devoid complaint thus fails to state a claim against Defendants Whittle and Doe One. See Iqbal, 556 U.S. at 678.

### 6.    Plaintiff Inadequately Identifies Does Two and Three

Plaintiff alleges Does Two and Three are unknown correctional officers who entered his cell on July 22, 2021, along with Defendants Young and Mosley.  (Doc. no. 1, p. 8.)  He alleges Doe Two punched him, Doe Three handcuffed him, and a third, unidentified individual kicked him in the head, knocking out his tooth.  (Id.)  "They" then raised Plaintiff's arms and carried him by the handcuffs to confinement where they crunched down on his back and uncuffed him before exiting the cell.  (Id.  at 8-9.)

Generally, "fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted).  An exception exists, "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).  In Richardson, the Eleventh Circuit Court of Appeals found merely describing a John Doe defendant as a correctional officer "was insufficient to identify the defendant among the many guards employed [at the facility.]" Id.

Plaintiff has provided insufficient information to identify Does Two and Three.  The Court knows nothing other than they were two correctional officers serving at the Columbia County Detention Center on July 21, 2022.  The Court cannot even discern whether Doe Two was a man or woman, as Plaintiff lists the Defendant as "Jane/John Doe."  The Court cannot order the United States Marshal to effect service without further information.  While the Court is allowing the excessive force claim to proceed against Defendants Young and Mosley, the Court must recommend dismissal of Does Two and Three.

### 7.   Plaintiff's Official Capacity Monetary Claims

Plaintiff states he is suing Defendants James, Saint, Young, Whittle, Doe One, Correct Health, Mosley, and Doe Two in their official capacities.  (Doc. no. 1, pp. 2-4.)  However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, Plaintiff's official capacity claims against these Defendants for monetary relief fail as a matter of law.

## II.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants James, Saint, Whittle, Patrol Officer John Doe (Doe One), Correct Health, Unknown Correctional Officer Jane/John Doe (Doe Two), Howard, Smith, and Unknown Correctional Officer John Doe (Doe Three), as well as Plaintiff's official capacity monetary damages claims against Defendants Young and Mosley, be **DISMISSED** for failure to state a claim upon which relief may be granted.  By separate Order, the Court directs service of process on Defendants Young and Mosley based on Plaintiff's allegations of use of excessive force.

SO REPORTED and RECOMMENDED this 5th day of December, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA